UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 12-117WES |
| | : | |
| PETER J. HINES | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

  This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Peter J. Hines is in violation of the terms of his supervised release and, if so, for recommended disposition. In compliance with that directive and in accordance with Fed. R. Crim. P. 32.1, hearings were held on February 7, February 21, April 22, December 2, and December 16, 2019, and January 15, 2020. At the initial appearance on February 7, 2019, I ordered Defendant detained pending further proceedings; by the next hearing, the parties had agreed that the matter must be delayed due to the pendency before the United States Supreme Court of what subsequently issued as <u>United States v. Haymond</u>, 588 U.S. ___, 139 S. Ct. 2369, 2384-85 (2019) ("<u>Haymond</u>"), on June 26, 2019. After June 2019, the delay continued at the request of Defendant as the parties and the Court struggled with how to interpret <u>Haymond</u> and to apply it in the circumstances of this case.

  Finally, on January 15, 2020, with the parties in agreement, Defendant waived a revocation hearing and admitted certain facts, as well as that the government could prove the facts beyond a reasonable doubt, which are set out in a Stipulation and Agreement (ECF No. 78) (the "Agreement"), presented by the parties and signed by Defendant at the hearing. Based upon

the parties' joint recommendation and the other terms of the Agreement, Defendant's admission to the facts contained in the Agreement and the following analysis, I recommend that the Court revoke the current term of supervision and impose a sentence of four years of incarceration, followed by a ten-year term of supervised release. I further recommend that, while on supervised release, Defendant be required to comply with the following conditions except to the extent that Probation proposes different or additional conditions after receiving the psychological/psychosexual evaluation report discussed *infra*:

> **Defendant shall participate in a program of mental health treatment as directed and approved by the Probation Office. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.**
>
> **Defendant shall comply with all applicable federal and state laws regarding the registration of sex offenders in the state of residence, employment and school attendance, and shall provide verification of compliance with this requirement to the probation officer.**
>
> **Defendant shall participate in a sex offender specific treatment program as directed by the probation officer. Defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.**
>
> **Defendant shall participate in testing in the form of polygraphs or any other methodology approved by the Court in order to measure compliance with the conditions of treatment and supervised release. Defendant shall contribute to the costs of such testing based on ability to pay as determined by the probation officer.**
>
> **Defendant shall permit the probation officer, who may be accompanied by either local, state, or federal law enforcement authorities, upon reasonable suspicion of the violation of supervision, to conduct a search of Defendant's residence, automobile, workplace, computer, and other electronic communication or data storage devices or media.**
>
> **Defendant must submit to unannounced examination of his computer or other electronic equipment by the probation officer, who may be accompanied by either local, state, or federal law enforcement authorities, which may include retrieval and copying of all data from the computer to ensure compliance with this condition. In addition, Defendant must consent**

**to the removal of such equipment for the purpose of conducting a more thorough investigation and must allow, at the discretion of the probation officer, installation on Defendant's computer any hardware or software system to monitor his computer use.**

**Defendant shall have no intentional contact with any child under the age of 18, without the presence of an adult who is aware of Defendant's criminal history and is approved, in advance, by the probation officer. This does not extend to incidental contact with minors, which should be discussed with the probation officer.**

**Defendant shall not loiter in areas where children congregate. These areas include, but are not limited to, schools, daycare centers, playgrounds, arcades, amusement parks, recreation parks and youth sporting events.**

**Defendant shall not be employed in any occupation, business, or profession or participate in any volunteer activity where there is access to children under the age of 18, unless authorized, in advance, by the probation officer.**

**Defendant shall live at a residence approved by the probation office, and not reside with anyone under the age of 18, unless authorized, in advance, by the probation officer.**

**Defendant shall not possess any material, including videos, magazines, photographs, computer-generated depictions, or any other forms that depict sexually explicit conduct involving children or adults.**

**Defendant shall not enter any establishment involved in the sex industry, including but not limited to adult bookstores, massage parlors, and strip clubs.**

**Defendant must not use, possess, procure, or otherwise obtain any electronic device that can be linked to any computer networks, bulletin boards, internet service providers, or exchange formats involving computers. Any exceptions to this condition must be pre-approved by the probation officer.**

I.      BACKGROUND

On January 28, 2019, the Court granted the Probation Office's petition for the issuance of a warrant charging Defendant with the following violations:

**Violation No. 1: The defendant shall participate in testing in the form of polygraphs or any other methodology approved by the Court in order to measure compliance with the conditions of treatment and supervised release.**

3

> **The defendant shall contribute to the costs of such testing based on ability to pay as determined by the probation officer.**
>
> On January 19, 2019, Mr. Hines reported as scheduled to undergo a maintenance re-test polygraph exam, but refused to submit to the exam.
>
> **Violation No. 2: While on supervision, the defendant shall not commit another federal, state, or local crime.**
>
> On December 7, 2018, Mr. Hines possessed child pornography, in violation of 18 U.S.C. § 2252(a)(4) and (b)(2).
>
> **Violation No. 3: The defendant shall not possess any material, including videos, magazines, photographs, computer-generated depictions, or any other forms that depict sexually explicit conduct involving children or adults.**
>
> On September 7, 2018, Mr. Hines reported that he has been downloading adult pornography to his cell phone and viewing the material for the past six months. On December 7, 2018, Mr. Hines was found to be in possession of an Amazon Fire tablet, on which pornographic videos and images had been downloaded. On January 22, 2019, Mr. Hines was found to be in possession of an LG cell phone and Amazon Fire tablet, on which pornographic videos and images had been downloaded.
>
> **Violation No. 4: The defendant must not use, possess, procure, or otherwise obtain any electronic device that can be linked to any computer networks, bulletin boards, internet service providers, or exchange formats involving computers. Any exceptions to this condition must be pre-approved by the probation officer.**
>
> On October 22, 2018, Mr. Hines was found to be in possession of an LG cell phone, which had not been pre-approved by the Probation Department. On December 7, 2018, Mr. Hines was found to be in possession of an Amazon Fire tablet, which had not been pre-approved by the Probation Department. On January 22, 2019, Mr. Hines was found to be in possession of an LG cell phone and Amazon Fire tablet, which were not pre-approved by the Probation Department.

On February 7, 2019, Defendant appeared before the Court for his initial appearance and requested a two-week continuance because discovery was needed. On February 21, the parties advised that <u>Haymond</u>, a case pending before the Supreme Court potentially dispositive of this case, was scheduled shortly for oral argument; therefore, they requested a continuance to await

resolution of Haymond. Haymond issued on June 26, 2019. In brief, it clearly holds that 18 U.S.C. § 3583(k)'s five-year mandatory minimum prison sentence for certain sex offenses committed by SORNA defendants on federal supervised release is unconstitutional. Haymond, at 2384-85. Far less clear is Haymond's impact on a separate provision of § 3583(k), which provides that the statutory caps that normally cabin the length of incarceration for a supervised release violation are suspended when a SORNA defendant commits a new child pornography crime. The Court allowed several continuances at Defendant's request to allow the parties time to work on a Haymond-compliant solution that would adequately address Defendant's new criminal conduct as a violation without the need to bring new federal charges.

On January 15, 2020, the parties advised that they had reached a stipulated agreement containing the following provisions:

(1) specific facts that Defendant was prepared to admit, as well as that he was prepared to admit that these facts are supported by proof sufficient to establish them beyond a reasonable doubt;

(2) the acknowledgment that the admitted facts are sufficient to establish violations of four conditions of supervised release, as well as that one of them violates 18 U.S.C. § 2252(a)(4) and (b)(2);

(3) the parties' joint sentencing recommendation of four years of incarceration and ten years of supervised release (on which Defendant relied in making the admissions);

(4) Defendant's agreement that the jointly recommended sentence is lawful under 18 U.S.C. § 3583(k) in light of Haymond;

(5) Defendant's waiver of his rights to appeal or challenge any judgment based on the admitted facts and/or the imposition of the jointly recommended sentence; and

(6) the government's agreement that, provided Defendant is sentenced consistent with the joint recommendation and no appeal or other challenge is brought, it will not charge Defendant with new offenses based on the admitted facts.

ECF No. 78 (the Agreement).

5

After he was placed under oath, and the Court had a colloquy with him and was satisfied that he fully understood and accepted the terms of the Agreement, Defendant admitted the following:

(1) On January 22, 2019, Defendant possessed an LG cellular telephone and Amazon Fire tablet and had downloaded pornographic images onto them. He admitted that he had utilized BitTorrent, a peer to peer file sharing network, to download the images. The two electronic devices were seized.

(2) On January 19, 2019, Defendant refused to submit to a polygraph examination. On that day, Defendant was scheduled to undergo a maintenance re-test polygraph examination, arrived at the examination center and met the examiners, and indicated to the examiner that he refused to submit to the examination. Defendant opted to refuse, and nothing prevented him from submitting to the examination.

(3) On December 7, 2018, Defendant possessed an electronic device, an Amazon Fire tablet, onto which he had downloaded via the internet and viewed seven images of different children engaged in sexually explicit conduct, including both sexual intercourse and lascivious exhibitions of genitalia. The electronic device was seized.

(4) On October 22, 2018, probation officers found Defendant in possession of an electronic device, an LG cellular telephone, and it was seized from him.

(5) On September 7, 2018, Defendant admitted to probation officers that he has been downloading via the internet and viewing pornography on his cellular telephone and subsequently deleting the files. The cellular telephone was seized.

(6) Defendant had not obtained pre-approval from the Probation Department for possession of any of the electronic devices found in his possession, and the Probation Department had not approved Defendant's possession or use of any of these devices.

Based on these admissions and his acknowledgement that this conduct violates four conditions of supervised release, I found that Defendant is in violation of the terms and conditions of his supervised release.

   II.   APPLICABLE LAW

### A. Law Applicable to Sentencing

Title 18 U.S.C. § 3583(e)(3) provides that the Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the Court finds by a preponderance of evidence that the defendant has violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be sentenced to a term beyond five years if the instant offense was a Class A felony, three years for a Class B felony, two years for a Class C or D felony, or one year for a Class E felony or a misdemeanor. Defendant was on supervision for a Class C felony.

Pursuant to 18 U.S.C. § 3583(k), if a defendant required to register under the Sex Offender Registration and Notification Act (SORNA) commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term of longer than one year can be imposed, the Court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Section 3583(k) also provides that such term shall not be less than five years. Defendant meets the criteria for applying § 3583(k).

Haymond struck down 3583(k)'s mandatory minimum five-year sentence. However, based on the analysis set forth below, I conclude that Haymond does not impact the lifting of the ceiling of a maximum jail term of two years for a Class C felony. In any event, pursuant to the Agreement, Defendant has waived any rights he might have under Haymond to challenge a sentence in excess of the two-year cap for the instant violations.[1] Accordingly, pursuant to §

---

[1] The Agreement states in relevant part:

7

3583(k), Defendant may be sentenced to a term of incarceration for the charged supervised violations that exceeds the two-year cap in 18 U.S.C. § 3583(e)(3).

Title 18 U.S.C. § 3583(e)(2) provides that if the Court finds that the defendant violated a condition of supervised release, the Court may extend the term of supervised release if less than the maximum term was previously imposed. In this case, the maximum term of supervised release is life.

Title 18 U.S.C. § 3583(h) and § 7B1.3(g)(2) of the United States Sentencing Guidelines ("USSG") provide that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. In this case, the maximum term of supervised release is life.

Section 7B1.1 of the USSG provides for three grades of violations (A, B and C). Subsection (b) states that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade.

---

5. Defendant agrees that a 4-year term of incarceration for violation of his supervised release as set forth in ¶¶ 1, 2, and 3 and a subsequent 10-year period of supervised release is permissible and lawful under 18 U.S.C. § 3583(k) and remains permissible and lawful after the Supreme Court's decision in United States v. Haymond, 139 S. Ct. 2369 (2019).

6. Defendant waives any right to appeal or challenge any judgment finding any of the violations set forth in ¶¶ 1 and 2 and waives any right to appeal or challenge a revocation of supervised release resulting in a term of incarceration and subsequent term of supervised release as set forth in ¶ 5.

ECF No. 78 at 3 ¶¶ 5-6.

Section 7B1.1(a) of the USSG provides that a Grade A violation constitutes conduct that is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device, or any other offense punishable by a term of imprisonment exceeding twenty years. Grade B violations are conduct constituting any other offense punishable by a term of imprisonment exceeding one year. Grade C violations are conduct constituting an offense punishable by a term of imprisonment of one year or less; or a violation of any other condition of supervision. Section 7B1.3(a)(1) states that upon a finding of a Grade A or B violation, the Court shall revoke supervision. Subsection (a)(2) states that upon a finding of a Grade C violation, the Court may revoke, extend or modify the conditions of supervision. In this case, Defendant has committed a Grade B violation; therefore, the Court shall revoke supervision.

Section 7B1.4(a) of the USSG provides that the Criminal History Category is the category applicable at the time the defendant was originally sentenced. In this instance, Defendant had a Criminal History Category of I at the time of sentencing. Should the Court revoke supervised release, the Revocation Table provided for in § 7B1.4(a) provides the applicable imprisonment range. In this case, Defendant committed a Grade B violation and has a Criminal History Category of I. Therefore, the suggested range is four to ten months of incarceration.

Section 7B1.5(b) of the USSG provides that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered, for time previously served on post-release supervision.

  **B.**  **Analysis of *Haymond***

Defendant's crime of conviction was possession of child pornography pursuant to 18 U.S.C. § 2252(a)(4) and (b)(2), which is a Class C felony and carries a prescribed custody range of zero to ten years. His original sentence was twelve months and a day of custody, with ten years of supervised release to follow. He now stands charged with his third set of supervised release violations, one of which alleges that Defendant has again committed the crime of possession of child pornography. While § 3583(e)(3) mandates that a person like Defendant convicted of a Class C felony may receive no more than two years of custody "on any such revocation," because Defendant is required to register as a sex offender and the petition charges him with the commission of a new child pornography possession offense, this supervised release violation proceeding triggers 18 U.S.C. § 3583(k), the second and third sentences of which provide:

> If a defendant required to register under the Sex Offender Registration and Notification Act commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Such term shall be not less than 5 years.

The second sentence of § 3583(k) permits the Court to ignore the two-year statutory cap found in § 3583(e)(3). The third sentence requires the Court to impose a mandatory minimum incarcerative term of not less than five years.

In <u>Haymond</u>, the Supreme Court addressed the constitutionality of § 3583(k). The issue in this case is how <u>Haymond</u> impacts the second sentence. Because the answer is not obvious, I performed a detailed analysis of <u>Haymond</u>'s background in the district court and the Tenth Circuit and of its three opinions (the plurality, the concurrence and the dissent) from which the holding may be derived.

At the district court level, the Haymond sentencing court expressed "serious concerns" about imposing a supervised release sentence based on a statute that required "a mandatory *minimum* sentence at the *maximum* sentencing range for even the most serious Class A felonies in other revocation proceedings," and about doing so based on judge-found facts that meet a mere preponderance standard, as opposed to a jury finding facts supported beyond a reasonable doubt. United States v. Haymond, Case No. 08-CR-201-TCK, 2016 WL 4094886, at *7 (N.D. Okla. Aug. 2, 2016) ("Haymond I"), aff'd, 869 F.3d 1153 (10th Cir. 2017) ("Haymond II"), vacated and remanded, 139 S. Ct. 2369 (2019) ("Haymond III" or "Haymond"). Despite these concerns, the district court applied § 3583(k) as written and imposed the mandatory minimum custody term of five years, along with five years of supervision. Haymond II, 869 F.3d at 1157.

On appeal, the Tenth Circuit closely examined the constitutional implications of § 3583(k). The Tenth Circuit found the statute unconstitutional and in violation of the Fifth and Sixth Amendments because:

> (1) it strips the sentencing judge of discretion to impose punishment within the statutorily prescribed range, and (2) it imposes heightened punishment on sex offenders expressly based, not on their original crimes of conviction, but on new conduct for which they have not been convicted by a jury beyond a reasonable doubt and for which they may be separately charged, convicted, and punished.

Id. at 1162. In articulating the remedy, the Tenth Circuit was clear: "The **last two sentences** of § 3583(k) are unconstitutional and unenforceable." Id. at 1168 (emphasis supplied). Accordingly, "all violations of the conditions of supervised release would be governed by § 3583(e)(3), which appropriately ties the available punishments for revocation of supervised release to the original crime of conviction." Id. The Supreme Court granted review to assess the Tenth Circuit's constitutional analysis. Importantly, the Supreme Court vacated the Tenth Circuit's holding that

11

the last two sentences of § 3583(k) are unconstitutional and unenforceable, and the Court remanded for further proceedings. Haymond III, 139 S. Ct. at 2385.

In Haymond III, over a blistering dissent,[2] a majority (a plurality of four plus Justice Breyer in concurrence) of the Court held that, as applied, § 3583(k) is unconstitutional. Haymond III, 139 S. Ct. at 2384-85; id. at 2385-86 (Breyer, J., concurring in judgment). To find the *ratio decidendi*, however, the reader must go to Justice Breyer's narrow concurrence, which finds that § 3583(k) is unconstitutional due to three considerations:

> *First*, § 3583(k) applies only when a defendant commits a discrete set of federal criminal offenses specified in the statute. *Second*, § 3583(k) takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long. *Third*, § 3583(k) limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of "not less than 5 years" upon a judge's finding that a defendant has "commit[ted] any" listed "criminal offense."

Id. at 2386 (Breyer, J., concurring).

Consistent with the concurrence, the plurality explains the scope of its decision by grounding its analysis in two pathmarking Supreme Court cases: Alleyne v. United States, 570 U.S. 99 (2013), which deals with mandatory minimum sentences, and Apprendi v. New Jersey, 530 U.S. 466 (2000), which deals with statutory maximum sentences.[3] In so doing, the plurality

---

[2] The dissent, written by Justice Alito and joined by the Chief Justice and Justices Thomas and Kavanaugh, emphasizes that Justice Breyer's narrow concurrence "has saved our jurisdiction from the consequences of the plurality opinion," which creates the risk that "the whole concept of supervised release will come crashing down." Id. at 2387-88 (Alito, J., dissenting). According to the dissent, once a defendant is convicted of a crime, incarceration for supervised release violations is part of the original sentence. Id. at 2388 (Alito, J., dissenting). The crime of conviction places a defendant at risk of the imposition of incarceration for the maximum period of punishment provided by statute (for this case, ten years) and the maximum period of supervised release provided by statute (for this case, life); ultimately the dissent finds that the provision of law that restricts the total length of a sentence is the Eighth Amendment. Id. at 2390 n.4 (Alito, J., dissenting).

[3] Apprendi holds that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Alleyne holds that "the principle applied in Apprendi applies with equal force to facts increasing the mandatory minimum," meaning any fact (other than the fact of a prior conviction) that jacks up a compulsory minimum sentence must be found by a jury (or by a judge in a bench trial) beyond a reasonable doubt, if

"emphasize[s that its] decision is limited to § 3583(k) . . . and **the Alleyne problem raised by its 5-year mandatory minimum term of imprisonment**." Haymond III, 139 S. Ct. at 2383 (emphasis supplied). On Apprendi specifically, the plurality stated it "need not address the constitutionality of the statute's effect on [Mr. Haymond's] maximum sentence under Apprendi." Id. at 2379 n.4; id. at 2382 n.7 ("Just as we have no occasion to decide whether § 3583(k) implicates Apprendi by raising the ceiling of permissible punishments beyond those authorized by the jury's verdict, we do not pass judgment one way or the other on § 3583(e)'s consistency with Apprendi.") (internal citation omitted). In concurrence, Justice Breyer was equally clear that the Court's decision "would not transplant the Apprendi line of cases to the supervised-release context." Id. at 2385 (Breyer, J., concurring); United States v. Carver, Case No. CR17-5213RBL, 2019 WL 6498119, at *2 (W.D. Wash. Dec. 3, 2019) ("Justice Breyer, who wrote a separate concurring opinion, stated very clearly that Apprendi does not apply . . . ."). This aligns with the essence of the constitutional holding in Justice Breyer's concurrence, which hinges on the imposition of a mandatory minimum. Haymond III, 139 S. Ct. at 2386 (Breyer, J., concurring).

When the reader recalls that the second sentence of § 3583(k) relates to the statutory maximums and is an Apprendi-related provision, while the third sentence dictates the mandatory minimum, and therefore is an Alleyne provision, Haymond III's holding becomes clear: the Alleyne provision of § 3583(k), the third sentence, is unconstitutional, but the Court made no determination on the Apprendi-related second sentence. Applying Haymond III to this case, I find that it would be unconstitutional to sentence Defendant pursuant to the § 3583(k)'s third sentence, which requires a mandatory five-year minimum sentence. However, I further find that

---

the defendant does not admit the fact. Alleyne, 570 U.S. at 112; see United States v. Garay-Sierra, 885 F.3d 7, 14 (1st Cir. 2018).

13

Haymond III offers no constitutionally based prohibition on sentencing Defendant to more than two years in reliance on the second sentence. That is, I find that this Court may proceed in reliance on § 3583(k) as though the pen of judicial review struck a line through only its last sentence.[4] Therefore, there is no constitutional impediment to the imposition of the four-year sentence jointly recommended by the parties.

## III. ANALYSIS

On December 20, 2012, Defendant pled guilty to possession of child pornography and was sentenced to twelve months and a day, with ten years of supervised release, which began on May 1, 2013. Four months later, Probation filed the first revocation petition charging Defendant, *inter alia*, with repeated contact with his then-fiancée's children and lying to Probation about the contact; to sanction the violations, a new ten-year term of supervision was imposed. Two years later, in November 2015, the Court modified conditions to prohibit the possession or use of internet-linked electronic devices based on Defendant's admission that he had been intentionally viewing adult pornography and inadvertently viewed child pornography. In 2017, Probation filed a second petition, this time charging Defendant with six violations, including failure to register under SORNA, procuring an unapproved cell phone that contained adult pornographic images, and having contact with two minor children. Defendant was sentenced on May 18, 2017, to four months imprisonment followed by six more years of supervised release. Supervised release recommenced on May 30, 2017.

The next material event is the filing of the current petition in January 2019. Most serious is Defendant's admission that, on December 7, 2018, he possessed an unapproved (by Probation)

---

[4] At least one court has determined that the Haymond III court actually invalidated both of the final two sentences of § 3583(k) just as the Tenth Circuit did in Haymond II. Jividen v. Streeval, No. CV 19-060-HRW, 2019 WL 3976509, at *4 (E.D. Ky. Aug. 22, 2019). For the reasons set forth above, I disagree with that interpretation of Haymond III's controlling holding.

14

tablet onto which he had downloaded seven child pornography images from the internet. He also admits that he had been downloading, viewing and deleting pornography using an unapproved cell phone, that he downloaded pornographic images onto an unapproved cell phone and tablet from a peer-to-peer file sharing network in January 2019 and that he refused to submit to a January 2019 polygraph examination re-test when nothing prevented him from submitting.

Following significant work by the parties and by the Court, on January 15, 2020, the Agreement was signed by Defendant in the courtroom and presented to the Court. After Defendant was put under oath, I went over it with him to confirm his understanding of all of its terms, including that he would be giving up forever his right to argue that <u>Haymond</u> prevents a supervised release sentence in excess of two years, that his admissions are based on the beyond-a-reasonable-doubt standard and that the District Judge is not bound by the Agreement and may give him a different sentence, but that if he is sentenced to less than four years (with ten years of supervised release), the government's agreement not to bring new charges against him is void. Defendant also confirmed that he had signed the Agreement voluntarily. Based on this colloquy, on Defendant's signing of the Agreement and on the presentation by counsel for the parties, I accepted the Agreement and Defendant's waiver and advised him that my recommendation to the District Court would endorse the joint recommendation of the parties.

Regarding the conditions, the parties agreed to the list set out below. However, they also advised that Probation has procured funding for a psychological and psychosexual evaluation and written report to be completed prior to Defendant's release from prison.[5] Defendant requested that, once it is completed, this report be used by the Court to adjust his supervised

---

[5] After an extended colloquy about the optimal timing for the evaluation, the parties agreed that Probation should decide. It is possible that the evaluation may be available when this case reaches the District Court for sentencing and may result in some adjustment to the conditions recommended below. Or it may not be done until after Defendant completes his sentence, in which event, the conditions can be adjusted by modification.

release conditions based on which treatments and therapies would be most helpful in reducing recidivism and aiding Defendant's mental health and which treatments would be counterproductive to those goals.

On allocution, Defendant thanked the Court, defense counsel and the government for the substantial effort required to resolve this violation petition in a way that would allow him to avoid facing a new criminal charge.

Based on the foregoing, mindful of the 18 U.S.C. § 3553(a) factors of protecting the public and deterrence, the need to punish what is a profound breach of trust and notwithstanding that the joint recommendation is substantially above the applicable guidelines,[6] I find that the parties' joint recommendation is reasonable and recommend that the Court adopt it by imposing a sentence of four years imprisonment to be followed by a ten-year period of supervision with the special conditions set forth in this report and recommendation, except to the extent adjusted if the psychological/psychosexual evaluation report becomes available.

### IV. CONCLUSION

After considering the appropriate factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that the Court impose a sentence of four years incarceration, followed by a ten-year term of supervised release. I further recommend that, while

---

[6] For supervised release violations, the district court may impose an upward variance after "an individualized assessment based on the facts presented" and an "adequate [ ] expla[nation of] the chosen sentence." United States v. Mulero-Diaz, 812 F.3d 92, 98 (1st Cir. 2016) (alterations in original). The "guidelines" in the supervised release context are mere "policy statements," USSG Ch. 7, Pt. A (1), that do not carry all of the meaning appurtenant to the calculation of the "guidelines range" for the original sentence. Mulero-Diaz, 812 F.3d at 98. Nevertheless, core principles remain true: "A sentencing judge, 'draw[ing] upon his familiarity with a case[ and] weigh[ing] the factors enumerated in 18 U.S.C. § 3553(a),' may 'custom-tailor an appropriate sentence' above the applicable [guideline range]." United States v. Viloria-Sepulveda, 921 F.3d 5, 8-9 (1st Cir. 2019) (quoting United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013)). In this instance, with two prior revocations and the extremely serious nature of the admitted conduct, the upward variance embedded in the jointly recommended sentence is well supported by the pertinent § 3553(a) factors, particularly the need to deter Defendant from further crimes and to protect the public.

on supervised release, Defendant be required to comply with the following conditions unless Probation fashions different conditions after receiving Defendant's psychological/psychosexual evaluation report:

>Defendant shall participate in a program of mental health treatment as directed and approved by the Probation Office. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.
>
>Defendant shall comply with all applicable federal and state laws regarding the registration of sex offenders in the state of residence, employment and school attendance, and shall provide verification of compliance with this requirement to the probation officer.
>
>Defendant shall participate in a sex offender specific treatment program as directed by the probation officer. Defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.
>
>Defendant shall participate in testing in the form of polygraphs or any other methodology approved by the Court in order to measure compliance with the conditions of treatment and supervised release. Defendant shall contribute to the costs of such testing based on ability to pay as determined by the probation officer.
>
>Defendant shall permit the probation officer, who may be accompanied by either local, state, or federal law enforcement authorities, upon reasonable suspicion of the violation of supervision, to conduct a search of Defendant's residence, automobile, workplace, computer, and other electronic communication or data storage devices or media.
>
>Defendant must submit to unannounced examination of his computer or other electronic equipment by the probation officer, who may be accompanied by either local, state, or federal law enforcement authorities, which may include retrieval and copying of all data from the computer to ensure compliance with this condition. In addition, Defendant must consent to the removal of such equipment for the purpose of conducting a more thorough investigation and must allow, at the discretion of the probation officer, installation on Defendant's computer any hardware or software system to monitor his computer use.
>
>Defendant shall have no intentional contact with any child under the age of 18, without the presence of an adult who is aware of Defendant's criminal history and is approved, in advance, by the probation officer. This does not extend to incidental contact with minors, which should be discussed with the probation officer.

Defendant shall not loiter in areas where children congregate. These areas include, but are not limited to, schools, daycare centers, playgrounds, arcades, amusement parks, recreation parks and youth sporting events.

Defendant shall not be employed in any occupation, business, or profession or participate in any volunteer activity where there is access to children under the age of 18, unless authorized, in advance, by the probation officer.

Defendant shall live at a residence approved by the probation office, and not reside with anyone under the age of 18, unless authorized, in advance, by the probation officer.

Defendant shall not possess any material, including videos, magazines, photographs, computer-generated depictions, or any other forms that depict sexually explicit conduct involving children or adults.

Defendant shall not enter any establishment involved in the sex industry, including but not limited to adult bookstores, massage parlors, and strip clubs.

Defendant must not use, possess, procure, or otherwise obtain any electronic device that can be linked to any computer networks, bulletin boards, internet service providers, or exchange formats involving computers. Any exceptions to this condition must be pre-approved by the probation officer.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Crim. P. 59(b); DRI LR Cr 57.2(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 28, 2020